___

SO ORDERED,

*Katharine M. Samson*

**Judge Katharine Samson**
**United States Bankruptcy Judge**
**Date Signed: January 22, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **IN RE:  KENNETH WILLIAM STALNAKER AND TONYA DENISE STALNAKER** | **CASE NO. 05-54974-KMS** |
| | **CHAPTER 7** |
| **DEBTORS** | |
| | |
| **CECILE ROUSSEAU AND RUDOLPH ROUSSEAU, JR.** | **PLAINTIFFS** |
| **VS.** | **ADV. PROC. NO. 06-05015-KMS** |
| **KENNETH WILLIAM STALNAKER** | **DEFENDANT** |

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

This matter came before the Court on the Motion for Summary Judgment ("Motion") (Adv. Dkt. No. 57)[1] filed by Cecile Rousseau and Rudolph Rousseau, Jr. (collectively, the "Rousseaus" or "Plaintiffs").[2] No responsive pleading has been filed on behalf of the Debtor-Defendant, Kenneth William Stalnaker. Having considered the pleadings with attached exhibits and applicable law, the Court finds that the Plaintiffs are entitled to judgment as a matter of law and that the Motion should be granted. Accordingly, the court finds that the debt owed by

___

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 06-05015-KMS, are cited as "(Adv. Dkt. No. ___)"; and (2) citations to docket entries in the main bankruptcy case, Case No. 05-54974-KMS, are cited as "(Dkt. No. ___)."

[2] The Rousseaus also filed a Memorandum in support of the Motion, (Dkt. No. 57-1), and a Statement of Uncontested Material Facts. (Dkt. No. 57-2).

Stalnaker to the Rousseaus is nondischargeable under 11 U.S.C. § 523(a)(2).

## I. JURISDICTION

The Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## II. FINDINGS OF FACT

1. Kenneth William Stalnaker ("Stalnaker" or "Defendant"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code[3] on October 13, 2005. A general Discharge of Debtor was entered on May 8, 2006 (Dkt. No. 27).[4] On June 4, 2010, an Order Approving the Trustee's Final Report and Account of Administration of the Estate was entered. (Dkt. No. 83). Thereafter the Chapter 7 Trustee, Derek A. Henderson, filed his final account and distribution report certifying that the estate has been fully administered on August 4, 2010. (Dkt. No. 87).[5]

2. The Rousseaus filed a timely complaint against Stalnaker objecting to dischargeability of debt ("Complaint") on February 3, 2006.[6] (Dkt. No. 24, Adv. Dkt. No. 1). Stalnaker filed an answer to the Complaint denying that relief should be granted and requesting that the Court dismiss the Complaint and award costs and fees. (Adv. Dkt. No. 9). The allegations of the Complaint arise out of an August 20, 2001 purchase agreement wherein the

---

[3] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless specifically noted otherwise.

[4] The Discharge did not discharge "[d]ebts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged." (Dkt. No. 27, ¶ h).

[5] Although the case has been administered, it remains open to allow proceedings in this adversary matter. (Dkt. No. 91).

[6] Relief is requested under § 523(a)(6) according to the style of the Complaint. But paragraph XVI requests relief under §523(a) including but not limited to subparts (a)(2) and (a)(6). (Adv. Dkt. No. 1, at ¶ XVI).

Page **2** of **11**

Rousseaus agreed to purchase a home in New Orleans, Louisiana from Stalnaker, acting as agent for his mother, Gayle Barras Duhe.[7] (Adv. Dkt. No. 1, at 2). The Rousseaus allege that in September 2001, three days after the Rousseaus purchased the property, an active and longstanding termite infestation was discovered during an upgrade of electrical wiring. (Adv. Dkt. No. 1, ¶ VIII). The Complaint further alleges that recent renovations to the property covered up the infestation and widespread damage. (*Id.*). The Plaintifffs "contend that the Debtor/Defendant acted willfully and maliciously towards them by fraudulently misrepresenting the actual condition of the property and altering the appearance of the property by covering up and/or concealing the property's structural members." (Adv. Dkt. No. 1, ¶ XIV). The Rousseaus claim they incurred costs totaling $38,000.00 for necessary repairs to the damaged property and request that they be awarded a nondischargeable judgment with fees and costs. (Adv. Dkt. No. 1, ¶¶ X, XVI).

3.      A civil action filed by the Rousseaus against Stalnaker in the Civil District Court for the Parish of Orleans, State of Louisiana, was stayed pursuant to 11U.S.C. § 362(a) when Stalnaker filed his bankruptcy petition. (Adv. Dkt. No. 1, ¶ XV).

4.      On April 26, 2006, an agreed order was entered modifying the automatic stay for the limited purpose of allowing the Louisiana litigation to proceed for a determination as to Stalnaker's liability, if any, and holding the adversary proceeding in abeyance until a disposition of the Louisiana action. (Dkt. No. 26, Adv. Dkt. No. 11).

5.      Ultimately, after the conclusion of the Louisiana litigation and numerous status reports to this Court regarding the litigation and potential negotiations to settle the matter, the Rousseaus filed the Motion. (Adv. Dkt. Nos. 30, 34, 39, 43, 51, 57).

---

[7] The property is described in the Complaint as a "home, detached one bedroom apartment and lots situated at 5361 Pasteur Blvd., New Orleans, Louisiana, 70122, designated as Lot Nos. 18, 19 and 20, Sq. 15 Third District, City of New Orleans . . . . located in Orleans Parish, Louisiana." (Adv. Dkt. No. 1, at ¶ II).

6. The Rousseaus request summary judgment against Stalnaker on the issues of liability and damages "on grounds that Stalnaker, authorized to sell property owned by his mother, Gayle Barras Duhe, concealed and covered up evidence of terminate infestation and deteriorated wall structure in such a way as to make the defects incapable of detection and thereafter, intentionally failed to disclose the known material/ hidden defects by fraudulently misrepresenting the condition of the property which the Rousseaus subsequently purchased." (Dkt. No. 57).

7. In the memorandum brief filed in support of the Motion, the Rousseaus state that a judgment was entered by the Louisiana court on March 7, 2011, after a January 27, 2011, hearing on the Rousseaus' motion for partial summary judgment on the issue of liability. (Dkt. No. 57-1, at 7 Ex. 24). The Judge for the Civil District Court for the Parish of Orleans, State of Louisiana, ordered "that partial summary judgment regarding liability based on fraud is rendered in favor of Plaintiff's, Cecil Rousseau, wife of/and Rudolph Rousseau, and against Defendant, Kenneth Stalnaker, with Plaintiff's damages to be determined at a later date." (*Id.*). The Rousseaus then filed a motion for summary judgment as to damages requesting $36,079.57 together with any applicable legal interest. The court held a hearing on the matter on July 22, 2011. Stalnaker did not appear and the Louisiana court granted the motion and entered judgment on August 29, 2011.

8. The Rousseaus are seeking summary judgment on their nondischargeability claim. (Dkt. No. 57-1, at 8). In support of the Motion, the Rousseaus submitted a Statement of Uncontested Material Facts and supporting documentation, including depositions, affidavits, and Louisiana state court documents. (Dkt. No. 57). Stalnaker did not respond to the Motion.

### III.     CONCLUSIONS OF LAW

**A. Summary Judgment**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, made applicable through Federal Rule of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8] Summary judgment "is appropriate when, viewing the evidence in the light most favorable to the non-moving party, "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[O]nce the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Clark v. Am's. Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997) (internal citations omitted). Summary judgment is proper if the party opposing the motion fails to establish an essential element of his case. *Celotex,* 477 U.S. at 322–23 (1986).

Stalnaker did not file a response to the Rousseaus' Motion. But the movant has the burden of establishing the absence of a genuine issue of material fact regardless of whether a response is filed. *See Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (motion for summary judgment cannot be granted simply because

---

[8] Rule 56 was amended effective December 1, 2010, for purposes of improving procedures for summary judgment motions, but "[t]he standard for granting summary judgment remains unchanged." *See* Fed. R. Civ. P. 56 advisory committee note to 2010 Amendments.

there is no opposition); *Langston v. 3M Co.*, No. 2:12CV163-KS-MTP, 2013 WL 2318790, at *2 (S.D. Miss. May 28, 2013) (court cannot grant summary judgment by default); *Greer v. Healthcare Fin. Servs., LLC (In re Greer)*, 498 B.R. 98, 107 (Bankr. S.D. Miss. 2013) (summary judgment may not be granted by default). "In the event of a party's failure to respond to a motion for summary judgment, the court may accept as undisputed the facts listed in support of the motion and grant summary judgment if the movant makes a prima facie showing of his right to judgment." *Langston v. 3M Co.*, 2013 WL 2318790, at *2 (*citing Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988)). Because Stalnaker has not responded to the Motion, the Court accepts as undisputed the Rousseaus' Statement of Uncontested Material Facts. Accordingly, if the Rousseaus' Statement establishes the elements of § 523(a)(2)(A), § 523(a)(6), or both, they are entitled to judgment as a matter of law.

    **B. Section 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A); *Norris v. First Nat'l Bank in Luling (In re Norris),* 70 F.3d 27, 29 (5th Cir. 1995). "Section 523(a)(2)(A) encompasses three similar grounds for non-dischargeability, all of which apply to 'debts obtained by frauds involving moral turpitude or intentional wrong.'" *Lanier v. Futch (In re Futch),* No. 09–00144–NPO, 2011 WL 576071, at *17 (Bankr. S.D. Miss. Feb. 4, 2011) (citing *First Nat'l Bank LaGrange v. Martin (In re Martin),* 963 F.2d 809, 813 (5th Cir. 1992)).

Under § 523(a)(2)(A), a representation made by a debtor is a false pretense or false representation if it was: (1) a knowing and fraudulent falsehood; (2) describing past or current

facts; (3) that was relied upon by the other party. *AT&T Universal Card Servs. v. Mercer (In re Mercer),* 246 F.3d 391, 403 (5th Cir. 2001); *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292–93 (5th Cir. 1995). In contrast, a party objecting to discharge of a debt under § 523(a)(2)(A) for actual fraud must demonstrate that: (1) the debtor made representations; (2) the debtor knew the representations were false at the time they were made; (3) the representations were made with the intention and purpose to deceive the creditor; (4) the creditor actually and justifiably relied on the representations; and (5) the creditor sustained a loss as a proximate result of its reliance. *Gen. Elec. Capital Corp. v. Acosta (In re Acosta),* 406 F.3d 367, 373 (5th Cir. 2005) (*citing In re Mercer,* 246 F.3d at 403; *see also Bank of La. v. Bercier (In re Bercier),* 934 F.2d 689, 692 (5th Cir. 1991) (discussing actual fraud under § 523(a)(2)(A) as explained in *Keeling v. Roeder (In re Roeder),* 61 B.R. 179 (Bankr. W.D. Ky. 1986)); *E.H. Mitchell & Co. v. Alonzo (In re Alonzo),* No. 10–1044, 2011 WL 3586123, at *3 (Bankr. E.D. La. Aug. 12, 2011). The reliance requirement of § 523(a)(2)(A) requires justifiable, not reasonable, reliance. *Field v. Mans,* 516 U.S. 59, 74–75 (1995). Determining whether reliance is justified is a subjective inquiry that depends on the particular plaintiff and circumstances. *In re Alonzo,* 2011 WL 3586123, at *4.

Based on the Rousseaus' Statement of Uncontested Material Facts, accepted as true, the Court finds that the Rousseaus have met the elements of both false pretense or false representation and actual fraud.

### 1. False Pretense or False Representation

Prior to placing the home on the market, Stalnaker "engaged in a cosmetic operation . . .[that] improved the appearance of the property." (Adv. Dkt. No. 57-2, at 2–3 ¶5). This "cosmetic operation" included the removal and replacement of old siding. (*Id.* at 3 ¶6). The new siding was nailed on in some places and glued on in other places because the wall structural

members lacked the integrity to receive nails to support the new siding due to extensive termite damage. (*Id.* at 3 ¶8). Stalnaker admitted that the structural members "were in the same deteriorated condition when he removed and replaced the siding prior to placing the property on the market." (*Id.* at 3, ¶7). After replacing the siding, which concealed the evidence of termite infestation and damage, Stalnaker obtained a Termite Free Certificate from an extermination company. (*Id.* at 4 ¶10). And on the Property Disclosure Form provided by his listing agent, Stalnaker answered "unknown" to the following questions: (1) whether the property has ever had termites or other wood-destroying organisms; (2) whether he knew of any defects in the wall and roof structure; and (3) whether he knew of any other conditions, problems, or defects . . . that the purchasers should be aware of. (*Id.* at 5 ¶12). Both the Disclosure Statement and Termite Free Certificate were furnished to the Rousseaus when they entered into a purchase agreement for the sale of the home. (*Id.* at 6 ¶14). The Rousseaus later discovered significant termite infestation and damage, which required $36,079.57 to repair. (*Id.* at 7 ¶18, 8 ¶19).

By providing the Rousseaus with the Termite Free Certificate and Disclosure Statement, Stalnaker represented that the home was termite free and that, at a minimum, he had no knowledge of any other defects the Rousseaus should have been aware of. The representations therefore concerned past or current facts. Further, Stalnaker admitted in his deposition that the structural members were deteriorated when he replaced the siding. Thus, at the very least, he had knowledge of defects the Rousseaus should have been aware of and knew his representations were false at the time he made them. Finally, the Disclosure Statement and Termite Free Certificate were provided to the Rousseaus and they relied on them at the time of purchase. Accordingly, the Rousseaus have established the elements of false representation or false pretense under § 523(a)(2)(A) and are entitled to judgment as a matter of law.

### 2. Actual Fraud

The Court also finds that the Rousseaus have met the elements of actual fraud. Stalnaker represented to the Rousseaus that the home was free of termites or any other defects they should know about by presenting them with the Disclosure Statement and Termite Free Certificate. He knew these representations were false—he admitted that the structural members were deteriorated when he replaced the siding. Stalnaker made these representations with the apparent purpose of deceiving the Rousseaus and indeed, any other potential buyer for the home.

The Rousseaus justifiably relied on these representations when purchasing the home. The standard for § 523(a)(2)(A) is justifiable—not reasonable—reliance. *Field*, 516 U.S. at 61. And "[t]he justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *Third Coast Bank v. Cohen (In re Cohen)*, No. 12-1004, 2013 WL 4079369, at *11 (Bankr. E.D. Tex. Aug. 13, 2013). There were no red flags to alert the Rousseaus to Stalnaker's deception—in fact, his efforts concealed the termite infestation and damage from an exterminator, who issued a Termite Free Certificate. The Rousseaus were therefore not under any duty to investigate and their reliance was justifiable under § 523(a)(2)(A).

Finally, as a result of these representations, the Rousseaus incurred damages in the amount of $36,079.57 in actual costs to repair the damage and remove the infestation. Accordingly, the Rousseaus have met the elements of actual fraud under § 523(a)(2)(A) and are entitled to judgment as a matter of law.[9]

---

[9] Additionally, the Rousseasus' suit in Louisiana state court was based on the tort law concept of fraudulent representation. (Dkt. No. 57-2, at 10). Their Petition for Damages, filed in the Civil District Court for the Parish of Orleans, State of Louisiana, includes counts for redhibition, detrimental reliance, fraudulent misrepresentation, and breach of contract. (Dkt. No. 57). The elements of *delictual fraud* under Louisiana law include: (1) a misrepresentation of material fact, (2) made with intent to deceive, and (3) causing justifiable reliance with resulting injury. *Reese v. ICF Emergency Mgmt. Servs., Inc., L.L.C.*, 684 F. Supp. 2d 793, 803 (M.D. La. 2010). These

C. Section 523(a)(6)

To render a pre-petition debt nondischargeable under § 523(a)(6), a plaintiff must establish three elements: (1) injury by the debtor; (2) to another (or property of another); and (3) such injury was willful and malicious. *Whitney Nat'l Bank v. Phillips (In re Phillips),* No. 09–00033–NPO, 2010 WL 5093388, at *6 (Bankr. S.D. Miss. Dec. 8, 2010). The Fifth Circuit has articulated the standard for non-dischargeability under § 523(a)(6), concluding that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id. (quoting Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 606 (5th Cir. 1998)); *see also Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik),* 670 F.3d 624, 629 (5th Cir. 2012). Further, "for an injury to be 'willful and malicious' it must satisfy our two-part test and not be sufficiently justified under the circumstances to render it not 'willful and malicious.'" *Mann Bracken, LLP v. Powers,* 421 B.R. 326, 332 (Bankr. W.D. Tex. 2009) (discussing the history of § 523(a)(6) in the 5th Circuit and *citing Berry v. Vollbracht (In re Vollbracht),* 276 F. App'x. 360, 361–62 (5th Cir. 2007)). Stated differently, "for willfulness and malice to prevent discharge under Section 523(a)(6), the debtor must have intended the actual injury that resulted . . . . Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir.1998) (*citing Corley v. Delaney (In re Delaney)*, 97 F.3d 800, 802 (5th Cir. 1996)).

The Court finds that the Rousseaus have established the elements of § 523(a)(6). Stalnaker intentionally concealed a major defect from the Rousseaus: extreme termite infestation and damage from that infestation. He first concealed the defect by replacing the siding—even

---

elements are essentially identical to those required to show actual fraud under § 523(a)(2)(A). The Louisiana court entered judgment determining liability based on fraud.

going so far as to glue on the siding that could not be nailed on. Then, he affirmatively obtained a Termite Free Certificate from an exterminator and answered "unknown" to the questions on the Disclosure Statement when he admittedly knew of defects the Rousseaus should have been aware of before purchasing the home. These actions necessarily caused the injury suffered by the Rousseaus—$36,079.57 in costs to repair the damage. Therefore, Stalnaker's intent to injure may be inferred[10] and the Court finds that he acted willfully and maliciously. Further, the injury was incurred both by the Rousseaus and the property of the Rousseaus—the home they purchased. Accordingly, the Rousseaus have established the elements of § 523(a)(6) and are entitled to judgment as a matter of law.

## IV.  CONCLUSION

The Court concludes that the movant has demonstrated the absence of a genuine issue of material fact, has made a prima facie showing of the elements necessary for a finding of nondischargeability, and is entitled to judgment as a matter of law pursuant to both § 523(a)(2)(A) and § 523(a)(6). Therefore, the Motion is GRANTED. A separate judgment consistent with the opinion will be entered in accordance with Rule 58 of the Federal Rules of Bankruptcy Procedure.

## END OF DOCUMENT ##

---

[10] *See Acosta*, 406 F.3d at 372 (intent to deceive under § 523(a)(2)(A) may be inferred from reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation).